# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

KEITH C. JOHNSON,

              Plaintiff,

      v.

RLI INSURANCE COMPANY,

              Defendant.

Case No. 3:14-cv-00095-SLG

## ORDER RE MOTION TO COMPEL

At Docket 45 is Johnson's Motion to Compel Discovery. The motion has been fully briefed.[1] Oral argument was not requested and was not necessary to the Court's decision. For the reasons set forth below, the motion will be granted in part and denied in part.

## BACKGROUND

The facts relevant to this motion to compel are not in dispute. Keith Johnson was one of three passengers in a 1999 Chevrolet Suburban driven by Robert Stenehjem, Sr., that left the road near Soldotna, Alaska on July 18, 2011. Mr. Stenehjem was killed in the accident; Keith Johnson was severely injured. The Suburban was registered and titled to PWC LLC, an Alaska Limited Liability Company. At the time of the accident, Robert's brother, John Stenehjem, held a 33 1/3 percent ownership interest in PWC LLC. At issue

---

[1] *See* Docket 65 (Opp.), Docket 70 (Reply).

in this case is John Stenehjem's Personal Umbrella Liability Policy ("PUP") issued by RLI Insurance Company.[2]

In June 2012, Johnson filed suit against Kathleen Stenehjem as personal representative of the estate of Robert Stenehjem in North Dakota state court over the July 2011 accident.[3] RLI denied that the PUP provided coverage for the accident and denied a duty to defend or indemnify Kathleen Stenehjem in that suit. In April 2013, the North Dakota case settled.[4] The settlement resulted in a judgment in Johnson's favor against Kathleen Stenehjem of approximately $2.29 million and the assignment to Johnson of any claims Kathleen Stenehjem might have against RLI arising from the accident.[5]

On April 29, 2014, Johnson filed this suit in Alaska state court, seeking a declaratory judgment that Kathleen Stenehjem was entitled to a defense and indemnity in the North Dakota suit and seeking damages for breach of contract and bad faith.[6] The action was timely removed to the federal district court based on diversity of citizenship.[7]

On July 15, 2014, Johnson submitted his First Discovery Requests to RLI.[8] Request for Production No. 1 stated:

---

[2] Docket 1-1 (Compl.) at 2; Docket 65 (Opp.) at 8–9; Docket 43-2 (Neill Depo.) at 8.

[3] Robert Stenehjem was a resident of North Dakota at the time of the accident.

[4] *See* 43-17 (Order of Judgment).

[5] Docket 1-1 (Compl.) at 3–4.

[6] *Id.* at 5–8.

[7] Docket 1 (Notice of Removal).

[8] *See* Docket 46-10 (First Discovery Requests).

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 2 of 14

> Please produce for inspection and copying any and all documents and information accessible to you which constitute the RLI claim file for John Stenehjem.
>
> Without narrowing the above request, please note this request is intended to encompass, at a minimum, but is not limited to: any and all documents under the RU Claim Number 00268036, including the entire master paper and electronic coverage issue files including but not limited to all Claim Diaries, Claims Portfolio, Claims Memo Email, and Corporate Referral Reports. Without narrowing the above request, please note this request is intended to encompass all written documents including correspondence; memoranda; letters; account(s) statements; receipts; invoices; and all documents which you can access online; all electronically stored information; prior emails received or sent by any agent, employee and/or contractor then at RU, and any redundancy or 'dummy file.'[9]

Request for Production No. 10 stated:

> Please produce for inspection and copying the original affidavit of John Stenehjem dated January 14, 2013, and any draft, revision, and previous version of this affidavit.[10]

On August 25, 2014, RLI submitted its responses to the First Discovery Requests.[11] In response to Request for Production No. 1, RLI stated, in its entirety, "*See* documents produced with RLI's Initial Disclosure Statement, dated August 5, 2014."[12] Johnson represents that "RLI produced a heavily redacted version of the RLI claim file . . . along with an accompanying privilege log.[13] In response to Request for Production No. 10, RLI stated:

> RLI objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of

---

[9] *Id.* at 4-5.

[10] *Id.* at 9–10.

[11] Docket 46-12 (Responses to First Discovery Requests).

[12] *Id.* at 2.

[13] Docket 45 (Motion) at 6; Docket 46-11 (Privilege Log).

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 3 of 14

admissible evidence. RLI further objects that this request seeks information protected by attorney-client privilege or attorney work-product document. Without waiving said objections, see documents produced with RLI's Initial Disclosure Statement, dated August 5, 2014.[14]

On January 28, 2015, Johnson submitted his Second Discovery Requests to RLI.[15]

Request for Production No. 15 stated:

> Please produce, in their original electronic format with all metadata intact, all drafts, created at any time, of the "Affidavit of John Stenehjem" and identify the author of each and every draft.
>
> Without narrowing the above request, please note this request is intended to encompass, at a minimum, but is not limited to: all drafts created by, or attached to email generated by, any of the following individuals: . . [list of individuals omitted].[16]

Requests for Production Nos. 16–20 sought the following documents "in their original electronic format with all metadata intact, and without any information redacted": (1) all drafts of RLI's coverage denial letters of September 19, 2012 and January 18, 2013; (2) the "running summary" of claim #00268036 (previously produced in redacted form); (3) email exchanged relating to claim #00268036 (previously produced in paper form); (4) email related to claim #00268036 not saved in RLI's "Tower" document management system and not previously produced; and (5) documents created by or reviewed by Betsy McLaughlin or any other person within RLI's claims counsel department related to claim #00268036.[17] Requests for Production Nos. 22–26 sought RLI's files related to other

---

[14] Docket 46-12 (Response to First Discovery Requests) at 6.

[15] Docket 46-13 (Second Discovery Requests).

[16] *Id.* at 6–7.

[17] *Id.* at 7–9.

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 4 of 14

insurance claims "from the time period of 2005 to present involving the same legal questions as that presented in the case at bar."[18]

On March 2, 2015, RLI responded to the Second Discovery Requests by objecting to the production of any additional documents.[19] On March 23, 2015, the parties met and conferred on the disputed discovery requests but were unable to resolve their dispute.[20]

## DISCUSSION

### I. Production of the file for claim #00268036

Johnson moves the Court to compel RLI to "disclose the selected portions of its claim diary, claim file, and correspondence between in-house counsel and adjuster it improperly redacted or withheld."[21] Clearly, the discovery that is sought is relevant to Johnson's claims.[22] At issue is whether the attorney-client privilege applies to all communications between RLI's insurance adjuster, Laina Heathman, and RLI's in-house counsel, Elizabeth McLaughlin. In civil cases, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."[23] Here, while the parties agree that state law applies in this diversity action, they dispute which state law is applicable. Johnson brought this suit in Alaska and asserts that Alaska privilege law

---

[18] Docket 45 (Motion) at 6; Docket 46-13 (Second Discovery Requests) at 9–12.

[19] Docket 46-16 (Response to Second Discovery Requests) (dated March 2, 2015); Docket 45 (Motion) at 8.

[20] Docket 45 (Motion) at 9.

[21] Docket 45 (Motion) at 10.

[22] *See* Fed. R. Civ. P. 26(b)(1).

[23] Fed. R. Evid. 501.

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 5 of 14

applies.[24] RLI asserts that North Dakota privilege law applies because North Dakota law "applies to issues of performance," and "[c]laim handling related communications bear on performance."[25]

Choice of law is a contested issue in the parties' summary judgment motions now pending before this Court. As to the specific attorney-client privilege issue, Alaska and North Dakota law have substantially similar evidence rules that create a privilege that applies to "confidential communications for the purpose of facilitating the rendition of professional legal services to the client."[26] As such, the Court need not decide which state's law applies on this one issue, for the law in both states limits the attorney-client privilege to "confidential communications made for the purpose of facilitating the rendition of legal services." Neither state creates a privilege so broad that it would permit the withholding of otherwise relevant discovery whenever an attorney performed an otherwise non-legal function or whenever an attorney was simply one of many copied on a string of inter-office emails.

In light of the foregoing, the Court will direct RLI to review its privilege log and produce those documents that are not "confidential communications made for the

---

[24] Docket 45 (Motion) at 11–12.

[25] Docket 65 (Opp.) at 13; see Docket 50 (Opp. to Johnson Motion for Summary Judgment) at 17–19 (setting out RLI's choice-of-law argument).

[26] Compare Alaska R. Evid. 503(b) ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client."), with N.D. R. Evid. 502(b) ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client."). The Court sees no meaningful distinction between the fact that Alaska's rule refers to "communications," whereas North Dakota's rule refers to "a communication."

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 6 of 14

purpose of facilitating the rendition of legal services." RLI will then produce for *in camera* review the remaining documents responsive to Request for Production No. 1 over which it continues to assert an attorney-client privilege.[27]

The work product privilege is a federal evidentiary privilege applicable in diversity cases.[28] Although both parties address work product to some extent in their briefing, the Court's review of RLI's response to Request for Production No. 1 and privilege log shows no assertions of that privilege, and the Court finds any objection on that basis with respect to RFP #1 to have been waived.[29]

## II. Production of documents in original form with metadata

At issue between the parties regarding Requests for Production Nos. 15–20 is whether the documents that have been produced by RLI in paper or .pdf format satisfied Federal Rule of Civil Procedure 34(b)(2)(E)'s requirements that electronically stored information be produced "as they are kept in the usual course of business" and "in a form or forms in which [the information] is ordinarily maintained or in a reasonably usable form or forms." Johnson seeks to have responsive documents provided to him in native formats with all accompanying metadata, while RLI asserts that the documents in paper

---

[27] RLI asserts that the case *Alaska Interstate Const., LLC v. Pac. Diversified Invs., Inc.*, 279 P.3d 1156, 1179 (Alaska 2012), stands for the proposition that under Alaska law, Johnson must make a *prima facie* showing that RLI's attorneys were consulted to assist in the perpetration of a crime or fraud. Docket 65 (Opp.) at 20. But that case addressed when a decidedly privileged communication is nonetheless discoverable; it did not address the issue here, which is what constitutes a privileged attorney-client communication in the first instance.

[28] *See* Fed. R. Civ. P. 26(b)(3); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576–78 (9th Cir. 1992) (discussing and applying federal rule in diversity action).

[29] *See* Docket 46-11 (Privilege Log); Fed. R. Civ. P. 34(b)(2)(B) ("*Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.").

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 7 of 14

or .pdf form that it has already provided are reasonably usable and no further production should be required.

The Ninth Circuit has not provided significant guidance on the application of Rule 34(b)(2)(E) to the production of metadata. However, numerous persuasive authorities provide helpful guidance on how to address issues of metadata discovery and the format in which electronically stored information is produced in discovery.

First, the advisory committee note to Rule 34(b) states that although a party may produce electronically stored information in a "reasonably usable form" other than in the information's native form, this does not mean "that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation."[30] Second, the Sedona Conference, a nonprofit legal policy organization relied upon by numerous state and federal courts on electronic discovery issues,[31] includes a commentary to its Principle 12 which provides

> criteria for deciding whether metadata should be produced in a given case. The commentary advises parties to consider: (i) "what metadata is ordinarily maintained"; (ii) the relevance of the metadata; and (iii) the "importance of reasonably accessible metadata to facilitating the parties' review, production, and use of the information." In selecting a form of production, the two "primary considerations" should be the need for and probative value of the metadata, and the extent

---

[30] Fed. R. Civ. P. 34(b), advisory committee's note, 2006 amendment.

[31] *See Lake v. City of Phoenix*, 218 P.3d 1004, 1005 n.1 (Ariz. 2009) (explaining nature of Sedona Conference); *see, e.g.*, *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 515 (6th Cir. 2014) (citing to Sedona Conference); *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 238 (S.D. Cal. 2015) (same); *Aguilar v. Immigration and Customs Enf't Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350, 355–60 (S.D.N.Y. 2008) (discussing metadata discovery issues and discussing evolution of Sedona Conference Guidance).

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 8 of 14

> to which the metadata will "enhance the functional utility of the electronic information."[32]

Finally, the Court found helpful the extensive discussion on the discovery of metadata in *Aguilar*.[33] There, a Southern District of New York district court denied a request for the production of emails in a format that captured metadata inconsistent with the documents that had been previously produced in their final form because (1) the metadata had not been requested in the original request for production; (2) there had been no showing that additional facts "of real value" would likely be found within the metadata; and (3) the volume of emails produced was not so large that metadata was necessary to manage the production of the document that had already been received.[34] The district court did allow for the re-production of certain Word and PowerPoint documents with metadata, but required the costs to be borne by the moving party, because the .pdf documents that had already been produced were text searchable and the moving party "failed to show that the 'who' and 'when' of document creation or modification [was] relevant to their . . . claims" and the additional information would be "at best, marginally relevant."[35]

With these principles in mind, the Court turns to the documents as to which Johnson seeks the metadata to be compelled.

//

//

---

[32] *Aguilar*, 255 F.R.D. at 356 (internal citations omitted).

[33] *Id.* at 353–59.

[34] *Id.* at 360.

[35] *Id.* at 361–62.

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 9 of 14

### A. Affidavit of John Stenehjem

Central to this case is whether Robert Stenehjem was covered by John Stenehjem's Personal Umbrella Liability Policy when the accident that injured Johnson occurred. The PUP provides that:

> PART II – WHO IS COVERED – INSUREDS
>
> . . .
>
> B. For Occurrences involving the use of Automobiles, Recreational Vehicles, or Watercraft:
>
> . . .
>
> > b. Anyone else who uses an Automobile . . . you own, borrow, rent, or use as a temporary substitute is covered if:
> >
> > (1) they use it with your express or implied permission; and,
> >
> > (2) the use is for the purpose you intended.[36]

In September 2012, RLI informally indicated to Johnson that it would not defend or indemnify Robert's estate.[37] On December 20, 2012, prior to RLI formally informing Kathleen Stenehjem and the estate that it would not defend or indemnify in the North Dakota case, RLI sent John Stenehjem a draft affidavit for his review. RLI has provided a copy of this draft affidavit in discovery.[38] In that draft affidavit, John Stenehjem was to have averred, among other things, that at the time of the accident (1) he did not own the Suburban; (2) at the time of the accident, the Suburban was not being used with his express or implied permission; and (3) he did not give and could not have given anyone

---

[36] Docket 51-5 (PUP) at 6.

[37] *See* Docket 46-1 at 1–3.

[38] *See* Docket 46-4.

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 10 of 14

permission to drive or otherwise use the Suburban.[39]  In short, the December 20, 2012 draft affidavit refuted key facts relevant to coverage under the PUP.  John Stenehjem did not sign that proposed affidavit.[40]  RLI revised the draft affidavit and sent John Stenehjem a new version on December 28, 2012.[41]  The revised draft removed certain statements related to John Stenehjem's ability to give permission to drive the Suburban and his knowledge of whether Robert Stenehjem had borrowed the Suburban from PWC LLC on the day of the accident.[42]  John Stenehjem signed the revised version of the affidavit before a notary on January 14, 2013.[43]  Johnson asserts that RLI's drafting and revisions of the affidavit reflect that RLI had a "pre-conceived position regarding its coverage denial."[44]  RLI formally notified Kathleen Stenehjem and the estate that it was declining coverage on January 18, 2013.[45]

Johnson's Request for Production No. 10 requested "the original affidavit of John Stenehjem dated January 14, 2013, and any draft, revision, and previous version of this affidavit."  RLI has produced the draft proposed affidavits, along with John Stenehjem's signed affidavit, in .pdf format.  In the context of this case, a fully responsive production that included revisions and previous versions would implicitly include the draft affidavit

---

[39] Docket 46-6.

[40] Docket 46-2 (Heathman Depo.) at 25 ll.5–22.

[41] Docket 46-7.

[42] *Compare* Docket 46-6, *with* Docket 46-8.

[43] Docket 46-9.

[44] Docket 45 (Motion) at 2.

[45] Docket 46-1 at 4–6.

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 11 of 14

documents in the original Microsoft Word format in which they had been drafted, because in that format revisions and the authors of those revisions could be visible within the document metadata that would not be visible in another form.  And the need for native-format documents and the accompanying metadata regarding the drafts is heightened here, where John Stenehjem is deceased and RLI seeks to introduce his signed affidavit into evidence under Federal Rule of Evidence 807's residual hearsay exception.  Unlike in *Aguilar*, the additional information contained within each draft affidavit's metadata could be highly relevant to Johnson's asserted claims.  By converting the responsive documents to .pdf format in its original response, RLI made it more difficult for Johnson to use the produced documents efficiently in this litigation and has not enabled Johnson to have the same ability as RLI to access, search, and display the relevant responsive information.  Accordingly, the Court will compel RLI to respond to Request for Production No. 15, which seeks with greater specificity all draft affidavits in their original native format.

*B.  Requests for Production 16–20*

Johnson seeks the production of numerous other documents (set out above) already produced by RLI as part of the claim file in native format with metadata.  Although Johnson's Request for Production No. 1 included "all electronically stored information," the request did not explicitly state that Johnson sought the production of metadata embedded within the documents responsive to his discovery request.  Nor does the Court find that the need to produce documents in native format was obvious to be fully responsive in the context of the claims at issue.  And, unlike with the draft affidavits, Johnson has not demonstrated the relevance of the metadata contained within the overall claim file to the claims at issue in this case or what specific evidence might be revealed

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 12 of 14

by re-producing responsive documents in native format. Rather, the requested documents in the claims file and that are otherwise associated with the claims file, not their metadata, are where the evidentiary value would be found. Therefore, the Court finds that producing the documents in .pdf or paper form constitutes a "reasonably usable form." Any marginal potential benefit of re-production of these documents in native format does not outweigh the additional burden of production, particularly in light of Rule 34(b)(2)(E)(iii)'s guidance that normally "[a] party need not produce the same electronically stored information in more than one form." Accordingly, the Court will not compel RLI to produce any additional response to Requests for Production Nos. 16–20.

### III. Production of RLI case files involving similar legal issues

Finally, Johnson seeks production of RLI's "other claim files involving similar legal issues to the claim at bar" from 2005 to the present.[46] RLI represents that it has 3,690 Umbrella Policy claim files it would need to review for responsiveness and that the resources necessary to properly review those files for responsiveness and applicable privileges and statutory protections would be unreasonably burdensome.[47] The Court finds that although relevant information might be derived from responses to these discovery requests, RLI has demonstrated that "the burden or expense of the proposed discovery outweighs its likely benefit," particularly given that Johnson has not identified

---

[46] Docket 45 (Motion) at 22.

[47] *See* Fed. R. Civ. P. 26(b)(2)(C)(i); Docket 65 (Opp.) at 25, 29 (estimating 11,070 hours of work to review all relevant files).

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 13 of 14

with specificity "the importance of the discovery in resolving" his claims.[48]  Accordingly, the Court will not compel RLI to respond to Requests for Production Nos. 22–26.

## CONCLUSION

For the reasons set forth above, IT IS ORDERED that:

1. The Motion to Compel is GRANTED with respect to RFP #1 as follows:  within 14 days of the date of this Order, RLI shall submit for *in camera* review all documents that it has redacted or withheld on the basis of attorney-client privilege that are responsive to Request for Production No. 1.  Prior to making this submission, RLI shall again review and revise as warranted its privilege log to ensure that it is consistent with the terms of this Order, and provide any supplemental discovery to Johnson.  RLI shall submit two copies of the documents to the Court for *in camera* review: one set with the redactions or withholdings marked and a second un-redacted set of the same documents;

2. The Motion to Compel is GRANTED as to the production of the metadata associated with all of the drafts and the signed affidavit of John Stenehjem.  Within 14 days of the date of this Order, RLI shall produce all documents responsive to RFP # 15.  RLI may produce a privilege log asserting relevant privileges in lieu of production as applicable, but shall submit two copies (redacted and unredacted) for *in camera* review within 14 days of the date of this Order; and

3. Plaintiff's Motion to Compel Discovery at Docket 45 is otherwise DENIED.

DATED this 31st day of August, 2015.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[48] Fed. R. Civ. P. 26(b)(2)(C)(iii).

3:14-cv-00095-SLG, *Johnson v. RLI Insurance Co.*
Order re Motion to Compel
Page 14 of 14